**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

TRACY JOHNSON, )
)
          Plaintiff, )
)
    v. )     Case No. 26-00016-CV-W-JAM
)
KANSAS CITY PUBLIC SCHOOLS, )
)
          Defendant. )

## <u>ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS</u>

Before the Court is Defendant's Motion to Dismiss Plaintiff's First Amended Complaint. (Doc. 30) For the reasons stated below the Motion will be granted in part.

### I.     BACKGROUND

On March 12, 2026, the Court entered an Order granting in part, Defendant's motion to dismiss Plaintiff's Complaint and ordered Plaintiff to file an Amended Complaint detailing the claim or claims that she asserts have been administratively exhausted, including sufficient factual allegations to support those claims. (Doc. 23) Plaintiff subsequently filed her First Amended Complaint, asserting eight counts: (1) race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Missouri Human Rights Act ("MHRA"); (2) age discrimination under the Age Discrimination in Employment Act ("ADEA") and MHRA; (3) disability discrimination under the Americans with Disabilities Act ("ADA") and MHRA; (4) failure to accommodate under ADA and MHRA; (5) retaliation under Title VII, ADA, ADEA, and MHRA; (6) hostile work environment under Title VII, ADA, ADEA, and MHRA; (7) failure to promote under Title VII

and MHRA; and (8) constructive discharge under Title VII, ADA, ADEA, and MHRA. (Doc. 29, ¶¶ 80–121) [1]

Plaintiff dually filed her first Charge of Discrimination with the Missouri Commission on Human Rights ("MCHR") and the Equal Employment Opportunity Commission ("EEOC") on March 17, 2024. (Doc. 30-1) Plaintiff filed her second Charge of Discrimination on February 10, 2025. (Doc. 30-2) As to her first Charge, Plaintiff received a Determination of No Violation from the MCHR on August 1, 2025 (Doc. 30-3), and a Notice of Right to Sue from the EEOC on August 27, 2025 (Doc. 29-1, p. 4). As to her second Charge, Plaintiff received a Notice of Right to Sue from the MCHR on August 11, 2025, (Doc. 29-1, p. 7), and from the EEOC on September 3, 2025, (Doc. 29-1, p. 2).

In its Motion to Dismiss and Memorandum in Support, Defendant argues that Plaintiff's Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), because Plaintiff failed to plead sufficient facts to support plausible claims for each count. (Doc. 30) Defendant specifically argues that claims under the MHRA should be dismissed because Plaintiff failed to obtain a valid right-to-sue notice from the MCHR and improperly split her administrative claims by filing a second Charge while the first one remained pending. (Doc. 30, pp. 2-5) With respect to Plaintiff's federal claims, Defendant contends that the Amended Complaint contains conclusory allegations, fails to adequately allege discriminatory intent or causation, and does not plead facts sufficient to establish retaliation, hostile work environment, or constructive discharge claims. (Doc. 30, pp. 5-9) Plaintiff filed suggestions in opposition[2] (Doc. 31), Defendant filed a reply (Doc. 32), and the motion is now ripe for review.

---

[1] The First Amended Complaint at Doc. 29 consists of 21 pages and 21 attachments, totaling 186 pages.
[2] Plaintiff argues in her suggestions in opposition that Defendant's motion to dismiss is untimely. Plaintiff's Amended Complaint was electronically filed on March 31, 2026, (Doc. 29), and Defendant's motion filed April 14, 2026, (Doc. 30) is timely.

2

## II.     LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 12(b)(6), a claim may be dismissed for "failure to state a claim upon which relief can be granted." *See Ashcroft v. Iqbal,* 556 U.S. 662, 677-87 (2009).  To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts sufficient to  "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  In ruling on a motion to dismiss, this Court "must liberally construe [the] complaint in favor of the plaintiff." *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010).  In doing so, the Court will "accept as true all of the factual allegations contained in the complaint, and review the complaint to determine whether its allegations show that the pleader is entitled to relief." *Schaaf v. Residential Funding Corp.,* 517 F.3d 544, 549 (8th Cir. 2008) (citing *Twombly*, 550 U.S. at 554-55).  However, the Court need not accept as true legal conclusions that are couched as factual allegations. *Iqbal*, 556 U.S. at 678.

Because Plaintiff is proceeding *pro se*, the Court liberally construes Plaintiff's Amended Complaint. *See Topchian v. JPMorgan Chase Bank, N.A.,* 760 F.3d 843, 849 (8th Cir. 2014); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.")  A *pro se* plaintiff must nonetheless "allege sufficient facts to support the claims advanced." *Sandknop v. Mo. Dep't. of Corr.*, 932 F.3d 739, 741 (8th Cir. 2019).

## III.     ANALYSIS

For the purposes of the present motion, the following allegations from Plaintiff's Amended Complaint are deemed true.  Plaintiff, a 62-year-old African American woman, worked for

Defendant for more than thirty years, including over twenty years as a Head Start Family Advocate. (Doc. 29, ¶¶ 2, 14–20) Plaintiff had a strong work history with positive evaluations and no prior discipline. (*Id.*) Plaintiff suffered permanent injuries from a 2007 automobile accident and Defendant was aware of her medical restrictions, and that her position historically did not require physically demanding labor. (Doc. 29, ¶¶ 21–29)

Plaintiff alleges that beginning in 2023, after reporting discrimination, safety concerns, and alleged policy violations, Defendant subjected her to hostility, retaliation and increased scrutiny, excluded her from meetings and workplace communications, failed to timely implement approved accommodations, and assigned her duties outside her medical restrictions. (Doc. 29, ¶¶ 30–45, 60–79) Plaintiff further alleges that supervisors routinely ignored and excluded her, omitted her from meetings and team communications, spoke to her in a demeaning manner, and isolated her from coworkers, creating a hostile work environment. (Doc. 29, ¶¶ 38, 60–62, 74) Plaintiff also alleges that similarly situated white employees received more favorable treatment and accommodations. (Doc. 29, ¶¶ 44, 52-59, 83-85), and that Defendant denied her promotional opportunities in favor of less qualified white candidates and subjected her to unwarranted investigations and discipline (Doc. 29, ¶¶ 46–59). Plaintiff alleges the working conditions ultimately forced her to retire on December 31, 2024. (Doc. 29, ¶¶ 63–79)

### A. MHRA Claims

In each count of Plaintiff's Amended Complaint, she alleges violations of the MHRA. (*See* Doc. 29, ¶¶ 80–121) Defendant argues that each MHRA claim must be dismissed because the MCHR dismissed Plaintiff's first Charge and issued a determination of no violation, and that the Notice of Right to Sue issued by the MCHR with respect to Plaintiff's second Charge is invalid.

4

To initiate a claim under the MHRA, a party must exhaust administrative remedies such that they "file an administrative complaint with MCHR and either adjudicate the claim through the MCHR or obtain a right-to-sue letter." *Stuart v. Gen. Motors. Corp.*, 217 F.3d 621, 630 (8th Cir. 2000).

As an initial matter, Defendant argues that the allegations contained in Plaintiff's second Charge constitute impermissible claim-splitting because they are related to or growing out of the same subject matter as the first Charge. Here, however, the subject matter of Plaintiff's two charges is distinguishable, at least to some degree. In the first Charge, Plaintiff alleges discrimination that occurred from July 24, 2023, to February 15, 2024, and specifically alleges age, disability, and race discrimination, as well as retaliation. (Doc. 30-1) While the second Charge also alleges age, disability, and race discrimination, as well as retaliation, the second Charge is based on allegations from July 15, 2024, until December 31, 2024. (Doc. 30-2) Although the bases for alleged discrimination are the same in both charges, and some of the issues appear to be a continuation of the alleged discrimination Plaintiff identified in the first Charge, the second Charge concerns a later time range as to some or all events, and includes some different alleged events and allegations of constructive discharge and failure to promote. Since the second Charge is premised fully, or in large part, on separate alleged actions occurring after the conduct identified in the first Charge, the Court cannot conclude at this juncture that the second Charge constitutes impermissible claim-splitting for purposes of this motion.

That said, in order to bring a lawsuit, Plaintiff must file her change with the appropriate administrative agency and receive a Notice of Right to Sue. *Stuart*, 217 F.3d at 630. The MCHR issued a "Determination of No Violation," rather than a Notice of Right to Sue, stating that the Executive Director of the Commission was "unable to conclude that there were any violations of

the MHRA" and informing Plaintiff of her right to appeal the decision in Missouri state circuit court.  (Doc. 30-3)  Based on the information before the Court, Plaintiff has not filed an appeal of the MCHR decision and therefore has not satisfied the prerequisite steps to bring a lawsuit with respect to the allegations in her first Charge.  Accordingly, any MHRA claims in Counts I through VIII based on conduct alleged between July 24, 2023, to February 15, 2024, in the first Charge are dismissed. *Allen v. Fam. Counseling Ctr.*, No. 1:09-CV-0064-CDP, 2010 WL 254925, at *2 (E.D. Mo. Jan. 19, 2010) (dismissing a plaintiff's MHRA claims where she received a "no probable cause" letter from the MCHR, finding that the appropriate remedy was to appeal the decision to the MCHR).  At this stage, Plaintiff may proceed only with MHRA claims arising from the second Charge.

## B. Federal Claims

With respect to Plaintiff's federal claims, Defendant argues that Plaintiff does not adequately allege race, age, and disability discrimination, and that she has not adequately pleaded retaliation, hostile work environment claims, failure to promote, and constructive discharge theories.  At the pleading stage, a plaintiff need not plead facts establishing a prima facie case because the prima facie case is an evidentiary standard, not a pleading requirement. *Wilson v. Ark. Dep't of Hum. Servs.*, 850 F.3d 368, 372 (8th Cir. 2017) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)).  A plaintiff need only allege facts sufficient to raise a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 371.  However, "elements of the prima facie case are [not] irrelevant to a plausibility determination in a discrimination suit. Instead, such elements are part of the background against which a plausibility determination should be made." *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016) (internal citations and

quotations omitted).  This issue at this stage is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to pursue her claims further.  *See Twombly*, 550 U.S. at 556.

1.  Title VII Race Discrimination – Count I

To establish a race discrimination claim under Title VII, the plaintiff must show that: (1) she belongs to a protected class; (2) she met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination.  *Young v. Builders Steel Co.*, 754 F.3d 573, 577 (8th Cir. 2014).  Defendant specifically argues that Plaintiff merely alleges she was treated differently than Caucasian employees without alleging facts to support discriminatory animus, and that Plaintiff's allegations regarding the preselection of white employees for promotion are conclusory and do not give rise to an inference of discrimination.

Plaintiff, however, does not rely solely on a generalized assertion that she was treated differently than employees of another race.  Instead, she alleges that she had decades of satisfactory employment and qualifications, yet was denied promotions, and that Defendant preselected less-qualified white employees for the positions for which Plaintiff applied.  (Doc. 29, ¶¶ 14–20, 50–59, 80–85)  Plaintiff also alleges there was disparate treatment with respect to race in the implementation of ADA accommodations and enforcement of discipline.  (Doc. 29, ¶¶ 44, 71–72, 83–85)  At the pleading stage, these allegations plausibly support an inference of race discrimination sufficient to survive dismissal.  Accordingly, Defendant's motion to dismiss is denied as to the Title VII claim alleged in Count I.

2.  ADEA - Count II

In order to establish a prima facie case of age discrimination under ADEA, Plaintiff must show: (1) she is at least forty years of age; (2) she was qualified for her position and met her

7

employer's legitimate expectations; (3) she suffered an adverse employment action(s); and (4) "that the circumstances of these actions g[i]ve rise to an inference of discrimination." *Smothers v. Rowley Masonic Assisted Living Cmty., LLC*, 63 F.4th 721, 728 (8th Cir. 2023); *see Hester v. Dep't of Treas.*, 137 F.4th 684, 689 (8th Cir. 2025).  Defendant argues that Plaintiff's allegations regarding "younger employees" are generalized, conclusory, and fail to plausibly support an inference of age discrimination.  Defendant further asserts that the alleged conduct, such as assignment of duties, workplace scrutiny, and alleged hostility, does not constitute an adverse employment action, and that Plaintiff has not exhausted her age-based theories of disparate treatment.

Plaintiff's charges, however, expressly identified age discrimination.  Although Plaintiff's charges did not specifically include allegations that she was described as "too slow" or unable to "keep[] up like the younger staff," that she was assigned "tasks inconsistent with her job description and medical restrictions, while younger and non-disabled employees were not required to perform similar tasks," or that "[y]ounger employees were not assigned physically demanding tasks or subjected to the same scrutiny," (Doc. 29, ¶¶ 76, 89, 90), Plaintiff alleged in both charges that younger employees were treated more favorably than she was (*see* Docs. 30-1, 30-2). Specifically, Plaintiff alleged that she was not allowed to work in the front office while younger employees were, and that she believed that she was not interviewed for positions for which she applied and was qualified because of her age.  (Docs. 30-1, 30-2)  The allegations of disparate treatment in Plaintiff's Amended Complaint are reasonably expected to arise from these allegations in her charges.  *See Stuart*, 217 F.3d at 631.  For purposes of assessing this motion to dismiss, Plaintiff has exhausted her administrative remedies with respect to her federal age discrimination claim.

Moreover, at the pleading stage, Plaintiff is not required to prove her case; she must only plead sufficient facts to establish a plausible cause of action. *Sorema N.A.*, 534 U.S. at 511. Plaintiff alleges that she was sixty-two years old, had more than thirty years of service with Defendant, and was qualified for her position and for promotional opportunities. (Doc. 29, ¶¶ 2, 14–20, 50–53) Plaintiff contends that she suffered adverse employment actions, including denial of promotional opportunities in favor of younger employees. (Doc. 29, ¶ 91) *See McKay v. U.S. Dept. of Transp.,* 340 F.3d 695, 698 (8th Cir. 2003) ("A myriad of cases have recognized that a failure to promote, like a failure to hire, is an adverse employment action for purposes of Title VII or the ADEA."); *see also Muldrow v. City of St. Louis,* 601 U.S. 346, 355 (2024) (for an adverse employment action in the Title VII context, a plaintiff is only required to show they suffered "some harm" with respect to "an identifiable term or condition of employment."); *Palmer as Tr. of Robert L. Palmer and Tamara C. Palmer v. Union P. R.R. Co.*, 139 F.4th 970, 973 (8th Cir. 2025) (applying "some harm" standard in the ADA context); *Milczak v. Gen. Motors, LLC*, 102 F.4th 772, 787 (6th Cir. 2024) (applying "some harm" standard in the ADEA context). Plaintiff further alleges age-related comments that she was "too slow" and not "keeping up like the younger staff." (Doc. 29, ¶ 89) These allegations plausibly support an inference of age-based animus sufficient to survive dismissal. Accordingly, Defendant's motion is denied as to the ADEA claim in Count II.

3. <u>ADA – Counts III and IV</u>

Plaintiff alleges two separate ADA claims: (1) disability discrimination and (2) failure to accommodate. To establish a claim of disability discrimination under ADA, "an employee must show that she (1) is disabled within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) has suffered an adverse employment action because of her disability." *Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013) (citing *Huber v. Wal–Mart Stores, Inc.*, 486 F.3d

9

480, 482 (8th Cir. 2007).  In ADA failure-to-accommodate cases, a plaintiff must ultimately "establish both a prima facie case of discrimination based on disability and a failure to accommodate it." *Hopman v. Union Pac. R.R.,* 68 F.4th 394, 396 (8th Cir. 2023) (quoting *Moses v. Dassault Falcon Jet-Wilmington Corp.*, 894 F.3d 911,923 (8th Cir. 2018)).

Defendant argues that both ADA claims must be dismissed because the Amended Complaint does not adequately plead that she has an actionable disability under the ADA. Defendant further asserts that Plaintiff fails to identify with sufficient specificity the nature of her impairment, how it substantially limits a major life activity, or what she is unable to do as a result and therefore has not plausibly alleged a disability.

"The ADA defines a disabled person as an individual with a physical or mental impairment that substantially limits one or more of that person's major life activities, an individual who has a record of such an impairment, or an individual who is regarded as having such an impairment." *Scheffler v. Dohman*, 785 F.3d 1260, 1261 (8th Cir. 2015) (citing 42 U.S.C. § 12102(1)).  "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working," as well as operations of major bodily functions.  *See* 42 U.S.C. § 12102(2).

Plaintiff alleges she suffered permanent injuries to her back and neck and suffered mobility issues following a serious automobile accident.  (Doc. 29, ¶ 21)  Plaintiff further alleges Defendant received medical documentation identifying restrictions on lifting, bending, pushing, pulling, and prolonged standing.  (Doc. 29, ¶ 23)  These alleged limitations implicate major life activities expressly recognized under the ADA, including lifting, bending, standing, and working.  *See* 42 U.S.C. § 12102(2)(A).  Plaintiff also alleges Defendant was aware of her restrictions for many

years and historically accommodated them.  (Doc. 29, ¶¶ 22–29)  Plaintiff contends Defendant approved accommodations including a chair and grabber tool but failed to provide them for more than six months.  (Doc. 29, ¶¶ 42, 44)  Plaintiff further alleges Defendant assigned her physically demanding duties outside her restrictions despite knowledge of her limitations.  (Doc. 29, ¶¶ 39–45, 64, 76)  At the pleading stage, these allegations are sufficient to plausibly allege both disability discrimination and failure to accommodate.  Accordingly, Defendant's motion is denied as to the ADA claims in Counts III and IV.

4.  <u>Retaliation – Count V</u>

To establish a retaliation claim under Title VII, an employee must show that (1) they engaged in statutorily protected conduct, (2) that they suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse action.  *Hester*, 137 F.4th at 690.  The prima facie elements of retaliation under ADEA and ADA mirror the Title VII elements.  *See Moses v. Dassault Falcon Jet-Wilmington Corp,* 894 F.3d 911, 924 (8th Cir. 2018) (elements of prima facie case of retaliation under ADA); *Calder v. TCI Cablevision of Mo., Inc.,* 298 F.3d 723, 731 (8th Cir. 2002) (elements of prima facie case of retaliation under ADEA).

Defendant argues Plaintiff fails to allege causation and instead relies only on temporal proximity.  Plaintiff, however, alleges that she repeatedly reported discrimination, retaliation, ADA violations, and policy concerns to her supervisors and Human Resources throughout 2023 and 2024.  (Doc. 29, ¶¶ 30–38, 103–104) Plaintiff further alleges that after engaging in this protected activity, Defendant initiated allegedly false complaints against her, subjected her to heightened scrutiny and investigations, excluded her from meetings and workplace communications, denied promotional opportunities, and intensified hostile treatment.  (Doc. 29, ¶¶ 38, 46–49, 60, 74–78, 105–106)

At the pleading stage, a plaintiff need not establish a causal connection, however they must allege facts sufficient to support a plausible inference of retaliatory motive. *Wilson*, 850 F.3d at 371–72. Plaintiff's allegations regarding treatment following her protected activity are sufficient to plausibly state a retaliation claim under Title VII, ADEA, and ADA. Accordingly, Defendant's motion is denied as to the Title VII, ADEA, and ADA claims of retaliation in Count V.

    5.   Hostile Work Environment – Count VI

To state a prima facie case for hostile work environment, a plaintiff must allege: "(1) she belongs to a protected group; (2) she was subject to unwelcome harassment; (3) a causal nexus exists between the harassment and the protected group status; (4) the harassment affected a term, condition, or privilege of employment; and (5) her employer knew or should have known of the harassment and failed to take proper action." *Warmington v. Bd. of Regents of Univ. of Minnesota*, 998 F.3d 789, 799 (8th Cir. 2021) (prima facie elements under Title VII); *see also Rickard v. Swedish Match N.A., Inc.*, 773 F.3d 181, 184 (8th Cir. 2014) (noting same analysis under Title VII and ADEA); *Ryan v. Capital Contractors, Inc.*, 679 F.3d 772, 778 (8th Cir. 2012) (prima facie elements under ADA, including that "that [plaintiff] is a member of the class of people protected by the statute, that [s]he was subject to unwelcome harassment, that the harassment resulted from [her] membership in the protected class, and that the harassment was severe enough to affect the terms, conditions, or privileges of [her] employment."); *Stewart v. Indep. Sch. Dist., No. 196*, 481 F.3d 1034, 1042-1043 (8th Cir. 2007) (elements for a claim of retaliatory hostile work environment under Title VII).

Defendant argues that Plaintiff fails to identify the protected characteristic motivating the alleged harassment and that the Amended Complaint describes only general workplace conflict, retaliation, and management decisions insufficient to meet the bar for severity or pervasiveness.

Here, although Plaintiff does not explicitly allege a causal nexus between her protected group status and the harassment she received in the five paragraphs under the heading of hostile work environment (Doc. 29, ¶¶ 108-112), reading the Amended Complaint as a whole, Plaintiff plausibly alleges that she was subject to harassment and a hostile working environment in various contexts, and that the hostility she experienced was connected to her race, age, disability, and protected activity (Doc. 29, ¶¶ 1, 3, 7, 31, 33, 36, 45, 60, 62, 63, 65, 74-79, 82, 89-91, 105, 108-112, 119). For example, Plaintiff alleges that she is a 62-year-old African-American with a known disability and asserts throughout the Amended Complaint that Defendant treated similarly situated employees outside her protected classes more favorably. (Doc. 29, ¶¶ 8, 21–25, 42–44, 52-59, 60–62, 76, 82-85, 88–91, 94–96) She further alleges that Defendant's conduct constituted a hostile work environment. (Doc. 29, ¶¶ 45, 82, 105)

Against that backdrop, Plaintiff alleges that she was subjected to daily hostility, exclusion from meetings, isolation from coworkers, withholding of information, public humiliation during the ADA accommodation process, and false accusations of misconduct. (Doc. 29, ¶¶ 30-33, 38, 44, 46–49, 60–62, 65) Further, Plaintiff alleges that the hostility intensified after she reported discrimination, ADA violations, and policy concerns to management and Human Resources. (Doc. 29, ¶¶ 30, 34–38, 49, 62, 104–106) Within weeks of her complaints, Defendant allegedly initiated multiple false or exaggerated complaints against her and subjected her to increased scrutiny and investigations. (Doc. 29, ¶¶ 46–49)

At the pleading stage, Plaintiff need only allege facts permitting a reasonable inference that Defendant is liable for the alleged misconduct. *See Ash v. Anderson Merchs., LLC,* 799 F.3d 957, 960 (8th Cir. 2015) (quoting *Iqbal,* 556 U.S. at 678) (internal quotations omitted). Taken together, these allegations plausibly support a hostile work environment claim at this juncture. Accordingly,

13

Defendant's motion is denied as to the hostile work environment claims in Count VI and to the extent they arise under other counts, including Count V.

6. Failure to Promote – Count VII

Defendant argues that failure to promote (Count VII) is not a stand-alone claim and should be dismissed because Plaintiff cannot establish discrimination, retaliation, or adverse action. Plaintiff however can bring a claim for failure to promote under different statutes, if she establishes that: (1) she was a member of a protected group; (2) she was qualified and applied for a promotion to a position for which the employer was seeking applicants; (3) she was not promoted; and (4) similarly situated employees, not part of the protected group, were promoted instead." *Dougherty v. Leidos,* No. 4:21-CV-01163-MTS, 2023 WL 4864541, at \*9 (E.D. Mo. July 31, 2023) (citing *Rose-Maston v. NME Hosps., Inc*., 133 F.3d 1104, 1109 (8th Cir. 1998)) (failure to promote elements under Title VII); *Avina v. Union Pac. R.R. Co.*, 72 F.4th 839, 843–44 (8th Cir. 2023) (failure to promote elements under ADEA) (internal citations omitted).

Here, Plaintiff alleges she was not promoted based on race, age, and retaliation, and that she applied for multiple promotional opportunities for which she was qualified based on her decades of experience and positive employment record. (Doc. 29, ¶¶ 2, 14–20, 50–53, 114–115, 116) Plaintiff further alleges that she was not selected for these positions, despite her qualifications, and that less qualified employees were selected instead. (Doc. 29, ¶¶ 52–54, 57, 84–85, 115) These allegations, taken as true, and for purposes of this motion, plausibly state a failure to promote claim and support a reasonable inference that Plaintiff was denied promotion due to discriminatory or retaliatory motives. Defendant's motion is denied as to Count VII.

14

7. <u>Constructive Discharge – Count VIII</u>

Defendant argues Count VIII should also be dismissed because: (1) it is not a stand-alone claim; (2) Plaintiff fails to identify the protected characteristic underlying the constructive discharge theory; and (3) Plaintiff does not allege facts showing that Defendant had a reasonable opportunity to correct any intolerable working conditions. To state a claim for constructive discharge, Plaintiff must show that "(1) a reasonable person in her situation would find the working conditions intolerable, and (2) the employer intended to force her to quit. An employee must, however, grant her employer a reasonable opportunity to correct the intolerable condition before she terminates her employment." *Bell v. Baptist Health*, 60 F.4th 1198, 1203 (8th Cir. 2023) (Title VII constructive discharge elements); *see also Betz v. Chertoff*, 578 F.3d 929, 936 (8th Cir. 2009) (citing *Reedy v. Quebecor Printing Eagle, Inc.*, 333 F.3d 906, 910 (8th Cir. 2003) (constructive discharge elements under ADEA); *Garrison v. Dolgencorp, LLC*, 939 F.3d 937, 943 (8th Cir. 2019) (constructive discharge elements under ADA).

Defendant's "stand-alone claim" argument is unavailing. Plaintiff specifically references Title VII, ADA, ADEA, and MHRA in the constructive discharge section of her Amended Complaint and incorporates by reference all preceding paragraphs of the Amended Complaint. (Doc. 29, ¶¶ 118–121) If anything, Plaintiff elected to plead in a different section of her Amended Complaint allegations that otherwise could have been brought under other counts or headings. The organization of the pleading is not fatal to the allegation. Defendant's argument regarding the absence of a specifically identified protected characteristic is also unpersuasive at this juncture, because Plaintiff cross references and incorporates other allegations identifying various protected classes. (Doc. 29, ¶¶ 118-119)

15

Plaintiff alleges a continuing course of retaliatory and discriminatory conduct spanning approximately two years, including repeated assignment of duties outside her medical restrictions, prolonged failure to implement approved ADA accommodations, false and escalating disciplinary accusations, exclusion from workplace communications and meetings, and sustained supervisory hostility and humiliation.  (Doc. 29, ¶¶ 31–38, 39–45, 46–49, 60–65, 71-72, 74–79, 119–121) Plaintiff further alleges that these conditions persisted even after HR intervention and internal complaints, claiming Defendant had notice of the conduct and failed to remedy it, and that she was forced to retire on December 31, 2024, because no reasonable employee could remain under such conditions.  (Doc. 29, ¶¶ 36–38, 62–66, 74-79, 120)   Plaintiff states that she ultimately resigned only after the conditions escalated and remained unresolved.  (Doc. 29, ¶¶ 7, 63–66, 120)

Taken as true, these allegations support an inference, at this stage, that a reasonable employee in Plaintiff's position could have found the working conditions intolerable and that Defendant had an opportunity to correct the conduct but did not do so.  Accordingly, Defendant's motion is denied as to Count VIII.

## IV.    CONCLUSION

After careful consideration and for the reasons set forth above, Defendant's Motion to Dismiss (Doc. 30) the MHRA claim(s) is granted with respect to the factual allegations contained in Plaintiff's first Charge covering the date range of July 24, 2023, to February 15, 2024, for which Plaintiff did not receive a Notice of Right to Sue.  Accordingly, it is

ORDERED that Plaintiff's MHRA claims from her first Charge of Discrimination are dismissed.  It is further

ORDERED that Defendant's Motion to Dismiss is DENIED in all other respects.  It is further

ORDERED that the Clerk of the Court is directed to send a copy of this Order to Plaintiff via regular mail and a separate copy by certified mail, return receipt requested.


                                */s/ Jill A. Morris*
                                JILL A. MORRIS
                 UNITED STATES MAGISTRATE JUDGE